**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**UNITED STATES OF AMERICA**

**v.** **No. 5:24-cr-40-BJB**

**ANTONIO D. JACKSON**

* * * * *

## OPINION CLARIFYING SCOPE OF APPEAL RIGHTS

Antonio Jackson pled guilty to four drug charges, but only after (and in protest of) this Court's denial of his lawyer's request to withdraw minutes before jury selection was set to begin. And the Court subsequently sentenced him to 20 years' imprisonment on those counts of conviction, but only after denying Jackson's intervening motion to withdraw his guilty plea. Discussions in court during both his plea and sentencing hearings addressed Jackson's right to appeal those rulings. But they did so in a manner that might not, on a cold record, appear easy to square with the plain terms of the limited appellate exceptions to his plea agreement: "Unless based on the claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right to directly appeal his conviction and the resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742." Plea Agreement (DN 108) at 8.

So in connection with the judgment, the Court offers this clarifying order. The exceptions quoted above—standard in U.S. Attorney plea agreements in this District—could be read as limited to issues on which Jackson would have to surmount the demanding barriers imposed by the lines of authority associated with *Strickland v. Washington* (ineffective assistance) or *Berger v. United States* (prosecutorial misconduct). As discussed at some depth in this Court's opinion rejecting Jackson's challenges to his plea, the parties' arguments and the Court's rulings didn't sit neatly within either doctrinal box. Yet Jackson's contentions bore a close resemblance to those carved out of his appellate waiver. Particularly given the judiciary's interests in not just avoiding a miscarriage of justice or the appearance thereof, *see Hunter v. United States*, 608 U.S. 713 (2026), but actually *doing* justice in fitting process to notice and expectations, *see Hormel v. Helvering*, 312 U.S. 552, 557 (1941), Jackson has adequately preserved his right to challenge this Court's rulings on appeal. Counsel on both sides expressed agreement in open court. While no subsequent

events or arguments have eroded confidence in the correctness of those decisions, their legitimacy rests on the reality and perception of an orderly process for review that Jackson deserves—just as much as he deserves his 20-year sentence for his latest serious drug crimes.

**I.**

The lengthy procedural history of this prosecution is set out in detail in the Court's prior opinion. *See* Opinion (DN 125). In brief: moments "[b]efore the jury venire arrived in the courtroom for voir dire, defense counsel," Richard Walter, "made the surprise announcement that he was moving to withdraw as counsel and seeking a continuance on Jackson's behalf." *Id.* at 3. After an immediate ex parte hearing with the Magistrate Judge and a subsequent colloquy with the District Judge and opposing counsel in open court, the Court denied the motion to withdraw. Jackson and his experienced counsel had identified no conflict "so great that it resulted in a total lack of communication preventing an adequate defense." *Id.* at 8 (citing *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)). "Jackson never said that defense counsel's strategy fell short in any way" and only objected to his own "limited exposure to amended exhibit and witness lists, which defense counsel brought to his attention three days before the April trial." *Id.* at 9.

The Court's ruling also expressly denied the implied request from Jackson and Walter for a second continuance of jury selection so Jackson could find another lawyer in whom he might place greater confidence. *Id.* at 1–2; Plea Hearing Transcript (DN 118) at 4. That left Jackson with the option of proceeding to trial (as had been scheduled for months) or entering into plea negotiations (as offered by the prosecutor). Opinion at 5. After a recess to allow Jackson to consider his choice, the parties returned an hour later with a written plea agreement. *Id.* In the agreement, Jackson pled guilty under Rule 11(c)(1)(C) to each of the four counts in the indictment and agreed to a 240-month term of imprisonment. Plea Agreement at 1, 2, 7. The agreement also contained a standard appellate waiver that surrendered Jackson's right to appeal, subject to two carve-outs for claims of prosecutorial misconduct or ineffective assistance of counsel:

> A. The Defendant is aware of his right to appeal his conviction and that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Unless based on the claims of ineffective assistance of counsel or prosecutorial misconduct, the Defendant knowingly and voluntarily waives the right to directly appeal his conviction and the

> resulting sentence pursuant to Fed. R. App. P. 4(b) and 18 U.S.C. § 3742.
>
> B. The Defendant is aware of his right to contest or collaterally attack his conviction and the resulting sentence under 28 U.S.C. § 2255 or otherwise. Unless based on claims of ineffective assistance of counsel or prosecutorial misconduct, Defendant knowingly and voluntarily waives any collateral attack argument.

*Id.* at 8, ¶ 12.

Although the motion to withdraw hadn't been litigated in orthodox Sixth Amendment terms, the Court clarified on the record that both prosecutor and defense counsel (as well as Jackson) understood this limited waiver to preserve his right to challenge the withdrawal denial:

> PROSECUTOR: The appeal waiver and the collateral attack waivers obviously allow him to challenge based off of ineffective assistance of counsel and prosecutorial misconduct. Otherwise, however, he is waiving his rights to appeal and collaterally attack the conviction and the resulting sentence.
>
> THE COURT: In other words, he may appeal my ruling this morning that the trial was going to go ahead and that I would not allow Mr. Walter to withdraw….
>
> ***
>
> THE COURT: … You will be able to challenge my decision not to allow you to get a new lawyer this morning and raise any other claims of constitutionally ineffective assistance of counsel and misconduct, if any, by the prosecution. But you need to file that notice, like I said, within 14 days of the judgment, okay?
>
> THE DEFENDANT: All right.

Plea Hearing Transcript at 41, 43.

Before the sentencing hearing, however, Jackson (through existing counsel) moved to withdraw his guilty plea. The Court denied that new motion and explained its earlier denial in a written opinion. That opinion expanded on, but didn't alter, the withdrawal-of-counsel ruling issued orally before the plea colloquy. Opinion at 19. It clarified, first, that Jackson's initial request wasn't framed or properly analyzed as a Sixth Amendment claim:

> Neither Walter, in moving to withdraw, nor Jackson, in seeking Court-appointed counsel based on indigency, explicitly invoked the Sixth Amendment. No one even mentioned that provision during the hearing. To the extent Jackson implicitly invoked the Sixth Amendment's guarantees, however, he was mistaken.

*Id.* at 10. Those Sixth Amendment concerns mapped closely onto the relevant standard for change-of-counsel, however. So the doctrinal difference was minimal. To the extent Jackson implicitly relied on the Sixth Amendment, that argument failed too:

> [T]he prudential case-management concerns … animating the multifactor test for counsel substitution generally likewise measure the specific reach of Sixth Amendment protections in the context of a request for new court-appointed counsel. If a trial court "did not abuse its discretion" in denying a motion to switch lawyers, it "[t]herefore … did not violate [the defendant's] Sixth Amendment rights" either. [*United States v.*] *Marrero*, 651 F.3d [453,] 468 (6th Cir. 2011). As already explained, no good reason required this Court to grant an entirely elective withdrawal motion that would've demanded new appointed counsel and a concomitant delay in trial.

*Id.* at 10. Importantly, the written opinion—quoting the earlier plea colloquy—expressly recognized Jackson's right to challenge this decision, whether cast in procedural or constitutional terms, notwithstanding his limited appellate waiver: "[T]he Court reemphasized the earlier ruling on substitute counsel and assured Jackson that he would have the ability to challenge that ruling (and presumably the adequacy of his counsel's representation) in the Court of Appeals." Opinion at 13.

At sentencing, the Court and counsel again discussed appealability (though no official transcript yet exists). Again, all agreed the plea waiver preserved Jackson's objection to the counsel-withdrawal issue.

> THE COURT: Is that issue preserved for appeal under this agreement?
>
> MR. WALTER: I would think it would, at least if it's nothing else other than ineffective assistance of counsel, Judge.
>
> THE COURT: Is there a carve out in the plea agreement for an appeal waiver or a carve out from the typical appeal waiver.
>
> MR. HANCOCK: Only for ineffective assistance of counsel and prosecutorial misconduct.

Given this repeated and extensive discussion of Jackson's appellate rights on the record in this case, the Court does not read the ineffective-assistance exception found in this plea agreement as strictly limited to *Strickland* and exclusive of the Rule 33 issues discussed before jury selection and in the Court's subsequent opinion. Whether the same result would obtain in another case is not apparent, and a comprehensive survey of the relevant Sixth Circuit caselaw is beyond the scope of this clarifying order. In these circumstances, at least, the law of the circuit would appear to call for the agreement to be read to "give effect to the intent of the parties as expressed by the plain language in the plea agreement." *United States v. Beals*, 698 F.3d 248, 256 (6th Cir. 2012). "Ineffective assistance of counsel," though it may carry other and more specific connotations in different contexts (say, in a § 2255 petition for post-conviction relief), was used here in a manner that embraced the Court's denial of Jackson's last-minute request for a new lawyer and related motion to withdraw his plea.

Even were the contractual language read more narrowly, however, good reason would still exist not to preclude an appeal. As the Supreme Court recently emphasized, a defendant may appeal his conviction despite a contrary appellate waiver only in the case of an "egregious error." *Hunter*, 608 U.S. at 717, 727. Here all parties agreed that the plea agreement preserved Jackson's right to appeal the denial of his request to substitute counsel. And on that assumption, he surrendered his valuable trial rights. *See generally id.* at 730 (Gorsuch, J., concurring). The Supreme Court's decision in *Hunter* contemplated that some errors, though textually barred from review by a broad waiver provision, would remain subject to correction on appeal because otherwise they would "undermine public confidence in the judiciary." *Id.* at 727 (majority op.). To be sure, the source or benefits of such supervisory blue-penciling remain hazy. *Cf. id.* at 748 (Thomas, J., dissenting); *id.* at 746–47 (Barrett, J., concurring). Regardless of how far any such principle or discretion might reach as post-*Hunter* caselaw develops, Jackson's situation supplies a classic example of when a waiver-whipsaw might cast doubt on an otherwise valid confession, change of plea, and conviction. *See id.* at 726–27 (majority opinion).

Lest this appellate clarification cast any doubt on the Court's earlier trial-management decision, the record and caselaw here make overwhelmingly clear in the eyes of this judge that Jackson had no right to hijack jury selection and demand a second lawyer and a third trial date. At least not absent a reason far more compelling than anything he or Walter articulated that morning in court—or at any point since. Regardless of whether his claim is doomed, however, he has a right to raise it. And the terms of his plea agreement should not be overread to preclude even a flawed

argument about the election and effectiveness of his counsel (even if the motion was not originally or artfully cast as such). Construing Jackson's waiver in harmony with the plainly stated expectations of all signatories to the agreement promotes the public's confidence in the legal system. And it keeps this Court far away from the miscarriages of justice—"blatant constitutional errors" and "marked departure[s] from mandatory sentencing procedures," for instance—that the Supreme Court warned about. *Id.* at 726–27, 738–41. His case also stands as a reminder, largely absent from the discussion in *Hunter*, of how attentive lawyering in the trial court can avoid the need for lengthy appellate litigation over (of all things) the right to pursue appellate litigation.

* * *

During the period between sentencing and this order, Jackson has filed a motion to vacate and set aside his judgment under 28 U.S.C. § 2255. Because a motion of that sort may not be adjudicated until after a judgment has issued, the Court will docket it as of the issuance of this order and the judgment.

Benjamin Beaton, District Judge
United States District Court

October 23, 2026